NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0321n.06

Case No. 25-1179

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Jul 21, 2026 |
| | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| JASON DEMYERS, aka Jason Blackman, | ) | |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: DAVIS, MATHIS, and RITZ, Circuit Judges.

DAVIS, Circuit Judge. Jason Demyers pleaded guilty to conspiracy to distribute and possess with intent to distribute controlled substances and possession with intent to distribute cocaine. The district court sentenced him to 324 months' imprisonment, the bottom of his Guidelines range. On appeal, Demyers argues that his sentence is procedurally and substantively unreasonable. In particular, he contends that the district court incorrectly calculated the drug quantity attributable to him, failed to consider his policy disagreement with the Guidelines, erred in applying two sentencing enhancements, and placed too much weight on 18 U.S.C. § 3553(a)(6). We AFFIRM.

**I.**

*A. Factual Background*

In the fall of 2022, law enforcement began investigating a large-scale drug-trafficking organization operating in the Western District of Michigan and other states. From this investigation, authorities learned that Jason Demyers coordinated deliveries of methamphetamine and cocaine for the organization.

In October 2022, Demyers organized the shipment of a FedEx package containing about ten kilograms of methamphetamine to Jomo Grady. Law enforcement intercepted the package, completed the delivery of a fake controlled substance to Grady, and arrested him. Demyers maintained contact with Merria Wallace and Grady throughout the delivery. Merria Wallace tracked the status of the package eighteen times and updated Demyers on its whereabouts. And, at the time of Grady's arrest, he was on a FaceTime call with Demyers.

Even as his co-conspirators fell away, Demyers continued his involvement in the drug-trafficking organization. In November 2022, law enforcement arrested Evette Wallace after seizing methamphetamine and other drugs from her vehicle during a traffic stop. Evette Wallace revealed that she assisted Grady, Demyers, and Che Demyers in selling methamphetamine and that Demyers was a supplier. Throughout 2022 and 2023, Demyers coordinated flights for money couriers, Lanise Moody and Shirley Starks. Then, in June 2023, Demyers expressed to Franchot Barnes that he was interested in purchasing two kilograms of cocaine. After Demyers paid, Jonathan Conner prepared to meet Demyers with the drugs. But before Conner could complete the delivery, law enforcement conducted a traffic stop and seized cocaine from his vehicle. Conner informed authorities that he had completed three similar trips on behalf of Jamar Goins, whose

supplier was Demyers. This attempted delivery proved to be Demyers's last, as he was arrested in September 2023.

## B. Procedural Background

A grand jury returned a four-count indictment against Demyers and several co-conspirators. Demyers was charged in two of the counts: one count of conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(viii), and (b)(1)(C) ("Count One"), and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii) and 18 U.S.C. § 2 ("Count Three"). Count One alleged that the offense involved 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of cocaine. Count Three, for its part, alleged that the offense involved 500 grams or more of a mixture or substance containing a detectable amount of cocaine.

In October 2024, Demyers pleaded guilty to both counts. He conceded his participation in both the October 2022 and June 2023 episodes. Accordingly, he admitted responsibility for 9,313 grams of pure methamphetamine and 2,009.12 grams of cocaine. The district court accepted his plea on both counts.

In the presentence report, the probation officer outlined Demyers's responsibility for a converted drug weight of 270,162.22 kilograms of methamphetamine and cocaine. The probation officer therefore calculated Demyers's base offense level as 38. The presentence report also recommended sentencing enhancements due to Demyers's role as an organizer or leader and his commitment of the offenses as part of a pattern of criminal conduct engaged in as a livelihood. Demyers objected to the drug-quantity calculation, arguing that he was accountable only for the 9,313 grams of pure methamphetamine and 2,009.12 grams of cocaine that he previously

conceded. Accordingly, Demyers agreed that, under the pure-methamphetamine, or "ice," Guidelines, he was responsible for a converted drug weight of approximately 186,661 kilograms. But Demyers asserted that the methamphetamine-mixture Guidelines should apply, rather than the pure-methamphetamine Guidelines, because the pure-methamphetamine Guidelines overstate the seriousness of his conduct. Demyers also objected to both sentencing enhancements.

At sentencing, the district court found that Demyers's base offense level was 38 based on a converted drug weight of approximately 270,000 kilograms attributable to him. After the court heard Demyers's objections to the application of the pure-methamphetamine Guidelines and to both sentencing enhancements, the court explained that it had "considered all arguments in support of [Demyers's] request for a lower sentence." (Sentencing Tr., R. 593, PageID 3446). The district court determined that Demyers's Guidelines range was 324 to 405 months' imprisonment based on his total offense level of 41 and criminal history category of I. The court then sentenced Demyers to a within-Guidelines sentence of 324 months' imprisonment. This appeal followed.

## II.

We review the reasonableness of a sentence for an abuse of discretion. *United States v. Reed*, 163 F.4th 338, 369 (6th Cir. 2025). The district court's legal conclusions, including its interpretation of the Guidelines, are reviewed de novo, and its findings of fact are reviewed for clear error. *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022). "[W]e affirm a district court's finding of fact so long as the finding is 'plausible in light of the record viewed in its entirety[.]'" *United States v. Grant*, 15 F.4th 452, 457 (6th Cir. 2021) (second alteration in original) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

Demyers challenges both the procedural and substantive reasonableness of his sentence. "A sentence is procedurally reasonable if the district court did not commit any significant

procedural errors, such as failing to properly calculate the Guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Zabel*, 35 F.4th 493, 504 (6th Cir. 2022) (citation modified). We consider a sentence substantively reasonable, on the other hand, if the district court "properly weighed the § 3553(a) factors such that it did not place too much weight on some, and too little on others." *United States v. Hawkins*, 165 F.4th 442, 457 (6th Cir. 2026).

**III.**

*A. Procedural Reasonableness*

Demyers argues that the district court improperly calculated the drug quantity used to determine his base offense level. He also asserts that the court failed to consider his policy disagreement that the Guidelines for pure methamphetamine overstate the seriousness of offenses involving the drug. And he claims that the district court erred in applying sentencing enhancements under U.S.S.G. § 3B1.1(a) for his leadership role in the drug conspiracy and § 2D1.1(b)(16)(E) for a pattern of criminal conduct engaged in as a livelihood. For its part, the government argues that the court properly applied the Guidelines, and even if there were any error, it would be harmless. We agree on both points and address each issue in turn.

*1. Drug Quantity*

*Reliability of the Evidence.* While Demyers accepts responsibility for 9,313 grams of methamphetamine and 2,009.12 grams of cocaine, which amounts to 186,661.82 in converted drug weight, he specifically contests the additional 83,500.4 kilograms in converted drug weight that the district court found attributable to him.

We will disturb a district court's drug-quantity determination only if it is "clearly erroneous." *United States v. Histed*, 93 F.4th 948, 955 (6th Cir. 2024) (citation omitted). This means that we will not reverse unless we are "left with the definite and firm conviction that the district court made a mistake." *Id.* at 954 (citation modified). The government must prove the drug quantity by a preponderance of the evidence. *United States v. Johnson*, 732 F.3d 577, 581 (6th Cir. 2013). The district court can "consider any information that may be reliable." *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019) (citation modified). For example, the court may "make a reasonable estimate based on physical evidence or testimony," *United States v. Tisdale*, 980 F.3d 1089, 1096 (6th Cir. 2020), or it "may consider . . . the price generally obtained for the controlled substance, financial or other records, [or] similar transactions in controlled substances by the defendant," U.S.S.G. § 2D1.1 cmt. n.5. "[B]oth sentencing and reviewing courts may consider relevant information which is prohibited from being introduced into evidence at trial in determining a defendant's sentence." *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000). Regardless, the evidence should have "'*some* evidentiary basis' to satisfy a 'minimal indicium of reliability.'" *Armstrong*, 920 F.3d at 398 (citation omitted); *see also* U.S.S.G. § 6A1.3(a) (noting that the evidence must have "sufficient indicia of reliability to support its probable accuracy").

The district court's factual findings as to the challenged drug quantities were not clearly erroneous. Importantly, the court "specif[ied] the evidence" it relied on for its drug-quantity determination and made "specific factual findings." *Histed*, 93 F.4th at 955. The district court also identified "significant corroborating evidence." (Sentencing Tr., R. 593, PageID 3398); *see United States v. Cohen*, 515 F. App'x 405, 413 (6th Cir. 2013) (collecting cases). For example, the court remarked that Evette Wallace's statements were consistent across forums and over

time—that is, in her conversations with law enforcement, testimony before the grand jury, and statements she made under oath at her plea hearing. *See United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004) ("[T]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." (citation omitted)). Similarly, regarding Conner's post-*Miranda* statements, the court explained that the addresses in Conner's phone buttressed his assertions that he completed similar trips at Demyers's direction.

Additionally, the court pointed to FedEx records, cellphone records, and surveillance to verify Demyers's conduct. *See Hernandez*, 227 F.3d at 699 (explaining that district courts may rely on circumstantial evidence to determine drug quantity "as long as they err on the side of caution"). Based on this evidence, the court noted the "similar weight, similar tracking, similar methodology, [and] similarly involved individuals" in the August and October 2022 deliveries. (Sentencing Tr., R. 593, PageID 3399). The court also relied on flight records for Starks and Moody to establish that they each had accomplished several trips on Demyers's behalf in 2022 and 2023. Finally, cell phone records confirmed Demyers's debt to Barnes, his existing tab, and the remainder of his tab after the attempted cocaine purchase in June 2023. Thus, the out-of-court statements enjoyed the minimum indicia of reliability required. And the district court did not clearly err in making factual findings partially reliant on them.

Moreover, as Demyers recognizes, the challenged drug amounts had no impact on his base offense level in any event. Section 2D1.1 governs the base offense level for violations of 21 U.S.C. § 841(a)(1). To reach a base offense level of 38, the offense must involve 90,000 kilograms or more of converted drug weight. U.S.S.G. § 2D1.1(c)(1). Because Demyers accepted responsibility for 186,661.82 kilograms in converted drug weight, his admitted conduct alone

placed him at a base offense level of 38. *See id.* So, regardless of the contested amounts, Demyers would have faced the same base offense level. Consequently, any error that may have occurred in attributing additional drug quantities to Demyers was harmless. *See United States v. Castro*, 960 F.3d 857, 867 (6th Cir. 2020).

*Policy Argument.* Demyers also faults the district court for allegedly failing to explain why it declined his proposed downward variance on policy grounds. At sentencing, Demyers argued that the pure-methamphetamine Guidelines overstate criminal culpability, so the district court should have applied the methamphetamine-mixture Guidelines instead. And he noted that Grady received a two-level reduction based on this same policy argument.

"Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Thomas-Mathews*, 81 F.4th 530, 544 (6th Cir. 2023) (citation omitted). Particularly where an argument is "nonfrivolous," the district court should provide its reasoning. *Rita v. United States*, 551 U.S. 338, 357 (2007). For a within-Guidelines sentence, the record need only "'make[] clear that the sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and took 'them into account' in sentencing him." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc) (quoting *Rita*, 551 U.S. at 358). To be sure, a district court may vary from the Guidelines based on policy considerations. *United States v. Allen*, 93 F.4th 350, 359 (6th Cir. 2024); *see also Pepper v. United States*, 562 U.S. 476, 501 (2011) (explaining that the district court may vary from the Guidelines where "the Commission's views rest on wholly unconvincing policy rationales"). But it is not required to do so. *United States v. Mosley*, 53 F.4th 947, 965 (6th Cir. 2022); *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011).

As a preliminary matter, the government suggests that Demyers waived his challenge to the district court's alleged failure to address his policy argument or invited error by not asking for further consideration of his policy-based concerns after the district court asked whether it had addressed his arguments. Alternatively, the government asserts that plain-error review applies because Demyers did not object to the district court's reasoning for denying his proposed variance. In the end, we need not resolve these questions because, under any applicable standard, Demyers's argument fails.

It was within the district court's discretion to deny Demyers's request for a downward variance based on his policy argument. *See Mosley*, 53 F.4th at 965. And the district court addressed the policy issue directly. For instance, the district court engaged in a colloquy with Demyers's counsel regarding the drug calculation and expressly acknowledged that Demyers "makes a point, that [a 27- to 33-year sentence] just feels contrary to public policy." (Sentencing Tr., R. 593, PageID 3453). Apparently unpersuaded by this point, however, the district court considered Demyers's Guidelines calculations to be "a heartland score." (*Id.* at PageID 3452). And after recognizing Demyers's public-policy argument, the district court went on to iterate that "this [was] a major multi-million dollar drug trafficking organization that was extensive," before ultimately declining to apply the policy-based downward variance. (*Id.* at PageID 3453). The district court also explained that because the overall converted drug weight attributed to Demyers was three times greater than the 90,000 kilograms necessary to place him at an offense level of 38 (before enhancements), it would have made no difference to apply the mixture Guidelines to the 9,313 grams of methamphetamine that Demyers admitted to as part of his guilty plea. True, under the mixture Guidelines, the converted drug weight of the 9,313 grams of methamphetamine would have been only 18,626 kilograms. *See* U.S.S.G. § 2D1.1 cmt. n.8(D). But the overall converted

drug weight—including the challenged quantities—still would have been well over the offense-level-38 threshold at 102,528.22 kilograms. As already discussed, the district court did not clearly err in attributing the challenged drug quantities to Demyers. So the district court did not abuse its discretion in rejecting the downward variance and instead imposing a 27-year (bottom-of-the-Guidelines) sentence, even if another co-conspirator received a variance. *See United States v. Terrell*, No. 23-5100, 2024 WL 1180429, at *2 (6th Cir. Mar. 19, 2024) ("[A] district court has no obligation to reject a properly calculated [G]uidelines range and vary downwards based on a defendant's disagreement with [G]uidelines policies."); *United States v. Mitan*, Nos. 21-5834/5836/5849, 2025 WL 1392242, at *7 (6th Cir. Apr. 9, 2025) ("[S]entencing courts need not impose strict proportionality among co-defendants.").

Additionally, the district court was not required to "give the reasons for rejecting any and all arguments by the parties for alternative sentences." *Vonner*, 516 F.3d at 387. Where the district court imposes a within-Guidelines sentence, "[t]he law leaves much, in this respect, to the judge's own professional judgment." *Id.* (alteration in original) (quoting *Rita*, 551 U.S. at 356). Here, the district court both explained its reason for rejecting Demyers's policy argument and confirmed that it had "considered all arguments in support of [his] request for a lower sentence." (Sentencing Tr., R. 593, PageID 3446). Therefore, Demyers has not identified a reversible error.

### 2. *Enhancement for Organizer or Leader*

Demyers also challenges the district court's imposition of a four-level enhancement under U.S.S.G. § 3B1.1(a) for his role as an organizer or leader in the drug-trafficking organization. Again, we see no error.

The Guidelines provide that a four-level enhancement should be applied "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was

otherwise extensive." U.S.S.G. § 3B1.1(a). "To qualify as a leader or organizer, the defendant must have exerted control over at least one participant in a supervisory, managerial, leadership, or organizational capacity." *United States v. Clay*, 162 F.4th 757, 779 (6th Cir. 2025) (citation modified) (per curiam). The district court should evaluate

> the exercise of decisionmaking authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*United States v. Messer*, 71 F.4th 452, 461 (6th Cir. 2023) (quoting U.S.S.G. § 3B1.1 cmt. n.4). It is not necessary for the court to discuss every factor before applying this enhancement. *United States v. Castilla-Lugo*, 699 F.3d 454, 460 (6th Cir. 2012). We review the district court's legal conclusion that a defendant was an organizer or leader "deferentially" and its factual findings for clear error. *Clay*, 162 F.4th at 779 (citation omitted).

The government argues that Demyers waived this argument or invited error. At most, says the government, we should review this argument for plain error. But Demyers objected to the leadership enhancement at sentencing, explained his reasoning, and stood on this objection later in the hearing—thereby preserving the issue. Demyers was not required to object again on this specific basis later in the hearing. *See United States v. Mooney*, 135 F.4th 486, 501 (6th Cir. 2025) (rejecting a defendant's obligation "to object to the sufficiency of the factual findings once the district court makes those findings"); *Vonner*, 516 F.3d at 390 ("[N]either the defense nor the government, in response to the *Bostic* question, has any obligation to raise objections already made.").

Here, the district court discussed the nature of Demyers's participation, the degree to which he was involved in planning or organizing, and the degree of control and authority that he exercised

over others. The district court characterized this drug-trafficking organization as "by far the most extensive one" that it had encountered. (Sentencing Tr., R. 593, PageID 3423). It described Demyers as one of two players "at the top of the food chain," "the leader," and "a very, very successful drug trafficking organizer until things went awry." (*Id.* at PageID 3423–24, 3426–27). And in terms of Demyers's conduct, the court explained that he supplied the drugs, transported couriers to the airport, served as a point person for issues during deliveries, and had others tracking and picking up packages on his behalf. Taken together, these actions demonstrated to the district court that Demyers had "decisionmaking authority," including "what to do in circumstances associated with this drug trafficking organization." (*Id.* at PageID 3426). Because the record shows that the district court properly considered Demyers's conduct and committed no clear factual error, we defer to the district court's application of the leadership enhancement.

Resisting this conclusion, Demyers insists that the district court failed to identify any individuals under his control. He specifically contends that the record does not show that he exercised authority over Merria Wallace. But the district court pointed to cell phone records as well as texts and calls between Demyers and Merria Wallace to support its conclusion. For instance, the record shows that Grady was on a FaceTime call with Demyers when he was arrested in October 2022 and that Demyers directed Merria Wallace to track the impending delivery that Demyers had coordinated with Grady. Following Demyers's text, Merria Wallace tracked the package eighteen times, and she called Demyers to inform him of the status. Moreover, flight and telephone call records also suggest that Demyers was responsible for organizing money couriers' flights. These facts were sufficient to show that Demyers exerted authority over at least one individual. *See Clay*, 162 F.4th at 779.

Demyers also argues that the district court erred in giving him a higher leadership enhancement than it gave Barnes, considering the similarities between the two defendants. True, the court described both Demyers and Barnes as "the two at the top of the food chain." (Sentencing Tr., R. 593, PageID 3423). But more than one defendant can qualify as a leader in the conspiracy. *See* U.S.S.G. § 3B1.1 cmt. n.4. And the court here recognized as much. Likewise, the district court found facts unique to Demyers to justify the four-level enhancement. For example, the court stated that Demyers participated in trafficking both cocaine and methamphetamine in Lansing and Kalamazoo. Thus, the court developed its reasoning for applying the leadership enhancement to Demyers.

### 3. Enhancement for Pattern of Criminal Conduct Engaged in as a Livelihood

Demyers further contends that the district court erred in applying a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(16)(E) because the record does not show that his pattern of criminal conduct was his livelihood. We disagree.

We review the district court's decision to apply this enhancement for an abuse of discretion. *See United States v. Buchanan*, 933 F.3d 501, 513 (6th Cir. 2019). We consider the district court's legal conclusions regarding this enhancement de novo and its factual findings for clear error. *Id.* at 514.

Section 2D1.1(b)(16)(E) provides for a two-level enhancement where the "defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood." Section 2D1.1(b)(16)(E) cross-references § 4B1.3, which describes the two criteria that satisfy "[e]ngaged in as a livelihood" in an application note. *Id.* §§ 2D1.1 cmt. n.20(C), 4B1.3 cmt. n.2. First, the defendant must have "derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law."

*Id.* § 4B1.3 cmt. n.2(A). Second, "the totality of the circumstances [must] show[] that such criminal conduct was the defendant's primary occupation in that twelve-month period." *Id.* § 4B1.3 cmt. n.2(B); *see also Buchanan*, 933 F.3d at 514.

The record contains the district court's findings on both prongs of the livelihood inquiry. On the first prong, the district court found that the "multi-million dollar" drug-trafficking conspiracy dated back to at least 2022. (Sentencing Tr., R. 593, PageID 3427). Further, Demyers pleaded guilty to a drug-trafficking conspiracy starting in or about 2021 and ending in 2024. Though he objected to participating in the conspiracy for its entire duration, the evidence shows that he participated in drug deliveries as early as August 2022 and as late as June 2023.

On the second prong, the district court observed that Demyers's tax returns did not support his claim that he worked for two different trucking companies, and his reported earnings did not account for his nearly $400,000 in assets and $1.5 million in casino transactions between 2013 and 2022. Considering this information and the fact that Demyers was unemployed in the six months leading up to his arrest, the district court concluded that Demyers had "a sketchy employment history" and imposed the two-level enhancement. (*Id.* at PageID 3427–28).

Demyers raises several concerns with the district court's analysis, none of which are persuasive. First, Demyers suggests that the district court failed to pinpoint the twelve-month period in which he earned the requisite income. But the district court could have considered any twelve-month period in its calculation, *see United States v. Kellams*, 26 F.3d 646, 648 (6th Cir. 1994), and the government offered evidence to show that Demyers was involved in the conspiracy over the course of 2022 and 2023. Second, citing *Buchanan*, Demyers asserts that the district court needed to identify the sales that led to his income of at least $14,500. But in *Buchanan*, the district court did not make *any* factual findings as to whether drug trafficking was the defendant's primary

occupation based on the totality of the circumstances. 933 F.3d at 517. By contrast, the district court here evaluated Demyers's inconsistent statements about his employment history, his financial assets, and his tax returns before applying the enhancement. Therefore, the district court did not abuse its discretion.

### B. Substantive Reasonableness

Finally, Demyers asserts that his sentence was substantively unreasonable because the district court compared his conduct to that of his co-defendant, Barnes, and thereby placed excessive weight on 18 U.S.C. § 3553(a)(6).

"We presume a within-Guidelines sentence is substantively reasonable. But a defendant can rebut this presumption if a district court chose a sentence arbitrarily, ignored pertinent § 3553(a) factors, or gave unreasonable weight to any single factor." *United States v. Miller*, 73 F.4th 427, 431 (6th Cir. 2023) (citation modified). Section 3553(a)(6) provides that the court should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But this provision "concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct—not disparities between codefendants." *United States v. Glover*, 167 F.4th 417, 430 (6th Cir. 2026) (citation omitted). In any event, the district court "*may* exercise [its] discretion and determine a defendant's sentence in light of a co-defendant's sentence." *United States v. Mahbub*, 818 F.3d 213, 233 (6th Cir. 2016) (citation omitted).

The district court did not assign unreasonable weight to § 3553(a)(6), nor did it abuse its discretion in comparing Demyers to Barnes. *See Miller*, 73 F.4th at 431; *Mahbub*, 818 F.3d at 233. True, the district court noted that Barnes and Demyers were "most closely aligned together." (Sentencing Tr., R. 593, PageID 3451). But the court also recognized differences between the

defendants' criminal histories, observing that Barnes had a few convictions for driving under the influence and therefore had a higher criminal history category than Demyers. Moreover, the district court explained that Demyers and Barnes "end[ed] up with the same score in different ways," so it needed to determine the "right score" for Demyers personally. (*Id.* at PageID 3451–52). Importantly, the district court emphasized that Demyers continued his criminal conduct, even as he encountered "close calls" and his co-conspirators were arrested. (*Id.* at PageID 3452). The district court also considered other § 3553(a) factors to calculate Demyers's sentence, including those that mitigated his conduct. Therefore, nothing in the record suggests that the court arrived at his sentence unreasonably.

**IV.**

For the reasons stated, we AFFIRM.